[S. F. No. 5541. In Bank.—December 4, 1911.]

## FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Appellant, v. FRESNO FLUME & IRRIGATION COMPANY (a Corporation), Respondent.

Casualty Insurance—Action for Premiums—Defense of Fraud—Oral Negotiation—Power of Equity—Authority of Agent.—In an action by a casualty insurance company to enforce unpaid premiums against an employer, insured against hazards from employees, where defendant relied upon an oral negotiation changing the terms of the policies, on the ground that to enforce the same would work a fraud upon the defendant, it is held that, conceding that a court of equity will not permit a party to enforce a contract contrary to his

oral agreement, where to do so would work a fraud upon the other party to the contract, and that the same matter may be set up in defense to an action on the contract, without seeking reformation thereof; yet that it is essential that such oral agreement be made by the party to the contract, or by an agent, acting with authority, actual or ostensible.

Id.—Agents without Authority under Terms of Policies.—Where the oral agreement relied upon was made by the local insurance agent of the company and approved by its general agent, though in the absence of any provision in the contract to the contrary, such agents might be deemed to have ostensible authority commensurate with the business intrusted to them; yet, where, by the terms of the policies issued to and accepted by the defendant, it was expressly provided that "no condition or provision of this policy shall be varied or altered by any one, unless by written consent of the president or secretary of the company," this was a valid limitation upon the authority of other agents, of which defendant had notice.

Id.—Estoppel of Policy-Holder to Deny Restrictions in Policy—Knowledge of Limitations—Reliance at Peril.—Where a policy expressly limits the power of an agent to change the conditions of the policy, or to dispense with any essential requisite contained therein, the holder of the policy is estopped, by accepting the policy, from setting up or relying upon any powers in the agent in opposition to the limitations and restrictions in the policy. And where the defendant knew that the agent had no power to alter the provisions of the policies in question, without the writetn consent of the president or secretary of the company, if it chose to rely upon the oral agreement of the agent, it did so at its peril.

Id.—Oral Representations and Agreement of Agent not Those of Plaintiff—Inadmissibility—Finding Unsustained.—The oral representations and agreement made by the unauthorized agent of the plaintiff were not the representations or agreement of the plaintiff, and for that reason were inadmissible evidence against the plaintiff, and could not support a finding against the plaintiff.

Id.—Action by Plaintiff upon Policies—Oral Modifications not Ratified.—It cannot be held that the plaintiff by suing upon the policies to enforce the written terms of the policies, ratified any unauthorized oral modifications of the policies.

Id.—Policy Signed by Insurer Alone—Effect of Acceptance.—The fact that each policy was signed by the insurer alone, does not render its obligations conclusive with respect only to itself, and not conclusive with respect to the insured, who did not sign the same. The receipt and acceptance of the policy by the insured, signed by the insurer, and embodying all the terms of the contract between the two, binds the acceptor as well as the signer by the terms of the paper.

Id.—Form of Remedy Immaterial.—Though under the common-law

rules of pleading the form of remedy against the insured who did not sign the contract would be in *assumpsit* rather than in covenant, yet the binding force of his obligation and the extent of his liability would not be affected by the mere form of action.

ID.—CONCLUSIVENESS OF CONTRACT UPON ACCEPTOR.—A policy of insurance, when accepted by the insured, is conclusive evidence of the engagements of the parties with respect to the obligations declared in it, and may not be contradicted by the acceptor by evidence of previous verbal arrangements.

ID.—FINDINGS AGAINST EVIDENCE—CONTRARY JUDGMENT UNSUPPORTED—NEW TRIAL.—Where the findings are against the evidence, and there are no sufficient findings to support a judgment for the appellant, the judgment must be reversed and a new trial ordered.

APPEAL from a judgment of the Superior Court of Fresno County. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Chickering & Gregory, for Appellant.

L. L. Cory, Goodfellow, Eells & Orrick, and A. M. Kidd, *Amicus Curiæ*, for Respondent.

THE COURT.—The appeal in this case was taken to the district court of appeal, which rendered a judgment of reversal. A rehearing was ordered, and, upon the second submission, two of the justices adhered to the views first announced, while the third wrote an opinion for affirmance. Upon this failure to agree the appeal was transferred to this court for hearing and determination.

Our own examination of the case has satisfied us of the correctness of the disposition first made by the court of appeal, and we adopt the following opinion of Hall, J., giving the reasons upon which that court based its judgment of reversal.

"This is an appeal from a judgment in favor of defendant taken within sixty days after the entry thereof.

"The action was brought to recover a balance of premiums unpaid upon two insurance policies executed and delivered by plaintiff to defendant and accepted by defendant, whereby plaintiff insured defendant against loss or damage resulting from liability for damages or injuries to employees of defend-

ant during the period of one year from the date of the policies. At the time of the execution of the policies a certain sum was paid as premium, based on the amount of wages that defendant estimated that it would pay to its employees during the year. The policies are attached to and made a part of the complaint. The policies clearly and without ambiguity provide that the premium to be paid shall be a certain given per cent of the wages actually paid during the year by defendant to its employees, and provide that if the wages actually paid exceed the estimated wages stated in the schedule contained in the policies, the assured shall pay the additional premium earned, and if the wages actually paid shall be less than the estimated wages stated, the insurer shall return to the assured the unearned premium *pro rata.*

"As a defense to the two causes of action set forth in plaintiff's complaint the defendant pleaded 'That heretofore, and on or about the 14th day of April, 1902, the plaintiff made application to the defendant to insure and indemnify it for one year from April 14, 1902, against all loss from any of the matters and things set forth in the complaint of the plaintiff herein; that the defendant thereupon informed the plaintiff that as it was then insured in another company covering all the matters and things set forth in the complaint of plaintiff, and for all such insurance paid as a premium a flat rate of $850.00 per annum, and the plaintiff thereupon assured the defendant that it would insure the defendant for one year upon the same terms, and it was then and there agreed upon, by and between plaintiff and defendant, that the plaintiff would issue and deliver to the defendant, and the defendant would thereupon accept the policies of insurance set forth in plaintiff's complaint, and that the defendant would be charged therefor and would only be required to pay a flat rate of $850.00 per annum in lieu and stead of the sliding scale and rate as set forth in plaintiff's complaint, and each cause of action therein, and that thereupon, and in pursuance to said agreement, and not otherwise, the policies of insurance set forth in plaintiff's complaint were so issued and delivered to the defendant, and the defendant accepted the same.'

" 'That the sole inducement to the defendant leading it to accept said policies of insurance from the plaintiff was the statement and agreement and representation of the plaintiff

that it would accept from the defendant the sum of $850.00 in full for all premiums due or to become due, upon said policies of insurance, covering said policy year, and that no other sum or premium of any kind would be required or demanded or exacted of the defendant by the plaintiff.'

" 'That at the time said policies of insurance set forth in plaintiff's complaint were issued and delivered to the defendant, the plaintiff then and there stated, represented and assured the defendant that, notwithstanding the rate and terms of said policies of insurance, all the premiums that the defendant would be required to pay for said policies of insurance was the flat rate of $850.00, and in consideration of said assurances and statements the defendant was induced to, and did actually accept said policies of insurance.'

"The court found the facts to be in accordance with the above allegations of the answer, and gave judgment for defendant accordingly.

"The only evidence to support the above findings of fact consisted of testimony as to statements and agreements orally made by Mr. Shepherd, the local agent of plaintiff at Fresno, to and with Mr. Shaver as the president of the defendant, and oral statements and conversations between Mr. Bosworth, the general agent of the plaintiff at San Francisco and Mr. Shepherd.

"This testimony as to oral negotiations and conversations, both before and at the time of the delivery of the policies, was admitted over the objections and exceptions of plaintiff, and these rulings are now relied upon as grounds for reversing the judgment.

"It is not claimed that according to the written terms of the policies accepted by defendant the amount sued for is not owing from defendant to plaintiff, but it is claimed by defendant that it is not bound by the terms of the written contracts.

"The theory of defendant, upon which it claims that this case is taken out of the general rule that, where the terms of a contract are reduced to writing, parol evidence is not admissible to vary or contradict the terms of the writing, is that it would be a fraud to allow one party to enforce the covenants of the writing contrary to his oral agreement by which the other party was induced to enter into the contract. In sup-

port of this contention respondent has cited a number of cases, among which are *Murray* v. *Dake,* 46 Cal. 644; *Isenhoot* v. *Chamberlain,* 59 Cal. 637, and *Eva* v. *McMahon,* 77 Cal. 472, [19 Pac. 872].

"But conceding that a court of equity will not permit one party to enforce a written contract contrary to his oral agreement, where to do so would work a fraud upon the other party to the contract, and that the same matter may be set up in defense of an action at law on such written contract, without seeking a reformation of the written contract, (*Eva* v. *McMahon,* 77 Cal. 472, [19 Pac. 872]; *Hoppough* v. *Struble,* 60 N. Y. 430; *Walker* v. *Brem,* 67 Cal. 600, [8 Pac. 320]), it is essential that such oral agreement be made by the party to the contract or by his agent, acting with authority, actual or ostensible.

"The policies delivered to and accepted by respondent were signed by the president and secretary of plaintiff, and countersigned by its general agent Bosworth. No evidence of the authority of Bosworth was given other than that he was the general agent of the plaintiff, and none was given as to the authority of Shepherd other than that he was the local agent at Fresno, and by the terms of his employment had no authority to change a policy in any way.

"It may be conceded that this was sufficient to clothe the agents with ostensible authority co-extensive with the business entrusted to them, in the absence of any notice of a limitation thereon. But the policies accepted and retained by defendant contained the provision that 'No condition or provision of this policy shall be varied or altered by any one unless by written consent of the president or secretary of the company.' This was a limitation upon the authority of agents of which defendant had notice. That such provisions in policies are valid has frequently been decided. The matter is discussed at great length in *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 308, [46 L. Ed. 213, 22 Sup. Ct. 133], and it was there held (syllabus) that 'It is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered.'

"In *Cleaver* v. *Traders' Ins. Co.,* 65 Mich. 427, [8 Am. St.

Rep. 908, 32 N. W. 660], the supreme court of Michigan said: 'Where the policy of insurance, as in this case, contains an express limitation upon the power of the agent, such agent has no legal right to contract as agent of the company with the insured, so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein, either by parol or writing; and the holder of the policy is estopped, by accepting the policy, from setting up or relying upon powers in the agent in opposition to limitations and restrictions in the policy.' To precisely the same effect are *Catoir* v. *Am. Life Ins. & Trust Co.*, 33 N. J. L. 487. *Weidert* v. *State Ins. Co.*, 19 Or. 261, [20 Am. St. Rep. 809, 24 Pac. 242].

"The same rule is followed in Massachusetts. 'The company which has seen fit to prescribe that the terms and conditions of its policies shall only be waived by its written or printed assent has prescribed only a reasonable rule to guard against the uncertainties of oral evidence, and by this the assured has assented to be bound.' (*Kyte* v. *Commercial Union Assurance Co.*, 144 Mass. 43, [10 N. E. 518].)

"To the same effect are *Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356, [28 Am. St. Rep. 645, 31 N. E. 31], and *Hawkins* v. *Rockford Ins. Co.*, 70 Wis. 1, [35 N. W. 34].

"Limitations upon the power of agents contained in a policy similar to the limitations contained in the policies sued on in this case, were held reasonable and binding on the assured in *Westerfeld* v. *New York Life Ins. Co.*, 129 Cal. 68, [58 Pac. 92, 61 Pac. 667].

"Defendant in the case at bar accepted the policies and retained them until the expiration of the insurance year, with full knowledge of their terms. There is no pretense that any misrepresentations were made as to their actual terms, or that any trick or device was resorted to by which defendant was prevented from reading them, and under such circumstances defendant must be presumed to have known the contents of the policies. (*New York Life Ins. Co.* v. *McMaster,* 87 Fed. 63, [30 C. C. A. 532].)

"Defendant thus knew that the agent had no power to alter the provisions of the policies without the written consent of the president or secretary of the insuring company. If defendant chose to rely upon the oral agreement of the agent,

it did so at its peril. The oral representations and agreement thus made were not the representations or agreement of the plaintiff, and for this reason the findings to that effect are not sustained by the evidence, and the evidence of such oral agreement and representations should not have been admitted in evidence.

"We do not think the contention of respondent that plaintiff ratified the alleged oral modification of the contracts by bringing this action can be sustained. We are unable to assent to the proposition that by attempting to enforce a written contract according to its terms plaintiff ratifies unauthorized oral modifications thereof."

Upon the second argument in the court of appeal, and in presenting the case here, the respondent has laid special stress upon the point that, because the policy was signed by the insurer alone, and not by the insured, it is conclusive with respect to its obligations alone, and not with respect to those of the party not signing. But we think there is no merit in this position. The receipt and acceptance by one party of a paper signed by the other, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper. (9 Cyc. 260, 391; Civ. Code, sec. 1589; *Watkins* v. *Rymill*, L. R., 10 Q. B. D., 178, 188.) Under the common-law rules of pleading, the fact that one of the parties had not executed the writing, if it were a specialty, would have required that he be sued in *assumpsit*, rather than in covenant, but the binding force of his obligation and the extent of his liability would not have been affected by the mere form of action. (*Locke* v. *Homer*, 131 Mass. 93, [41 Am. Rep. 199].)

The respondent cites a number of cases in which, notwithstanding the existence of an agreement in writing (signed by one of the parties alone) the party not signing has been permitted to prove the real agreement by parol evidence. But none of these dealt with the situation here presented, i. e., that of a writing which was intended, when signed by one of the parties, and accepted by the other, to operate as a contract embodying all of the obligations on both sides. The authorities relied upon all fall within recognized exceptions to the parol evidence rule. Some of them deal with writings which were prepared for execution by both parties, but were signed

by only one. The opinion in *Cavanaugh* v. *Casselman*, 88 Cal. 543, [26 Pac. 515], while generally favorable to the contentions of the appellant, contains some references bearing upon this point. (See, also, *Thomas* v. *Barnes*, 156 Mass. 581, [31 N. E. 683].) Other citations are to cases laying down the well-settled rule that recitals of consideration are not conclusive. (*Byers* v. *Locke*, 93 Cal. 493, [27 Am. St. Rep. 212, 29 Pac. 119].) This rule is not applicable here, where the clause relied upon is not a mere recital, but is a positive undertaking to pay premiums according to a specified mode of computation. The remaining authorities of respondent, so far as they have any bearing on the point under discussion, have to do with writings which were not intended to embody the entire agreement of the parties, but were either memoranda in the nature of receipts or were silent with respect to some of the terms upon which the parties had agreed. (*Mobile R. R. Co.* v. *Jurey*, 111 U. S. 584, 28 L. Ed. 527, 4 Sup. Ct. 566]; *Bank of Australasia* v. *Palmer*, L. R. (1897) App. Cas. 540; *Routledge* v. *Worthington Co.*, 119 N. Y. 592, [23 N. E. 1111]; *Rapp* v. *Giddings*, 4 S. D. 492, [57 N. W. 237]; *Ames* v. *Southern Pacific Co.*, 141 Cal. 728, [99 Am. St. Rep. 98, 75 Pac. 310].)

On the other hand, the contention of appellant that a policy of insurance, when accepted by the insured, is conclusive evidence of the engagements of the parties with respect to the obligations declared in it, and may not be contradicted by evidence of previous verbal arrangements, is abundantly sustained. (*Insurance Co.* v. *Mowry*, 96 U. S. 544, [24 L. Ed. 674]; *Thompson* v. *Ins. Co.*, 104 U. S. 252, [26 L. Ed. 765]; *Northern Ass. Co.* v. *Grand View Assoc.*, 183 U. S. 308, [46 L. Ed. 213, 22 Sup. Ct. 133]·; *Liverpool & L. & G. Ins. Co.* v. *Lumber Co.*, 11 Okla. 579, [69 Pac. 936]; *Niagara Fire Ins. Co.* v. *Johnson*, 4 Kan. App. 16, [45 Pac. 789]; *Franklin F. Ins. Co.* v. *Martin*, 40 N. J. L. 568, [29 Am. Rep. 271]; *Moore* v. *State Ins. Co.*, 72 Iowa 414, [34 N. W. 183]; *United States Cas. Co.* v. *Charleston etc. Mfg. Co.*, 183 Fed. 238.) The reasoning of these cases lends no support to the respondent's supposed distinction between the obligations of the party signing and those of the party not signing the policy. Indeed, the case last cited is, in this respect, precisely like the one before us.

We cannot, however, give assent to appellant's claim that judgment in its favor should be ordered. The findings, as they stand, would not support such a judgment. Under such circumstances, it has been the usual practice of this court, where a reversal was found necessary, to send the case back for a new trial. There may be exceptional instances justifying a different procedure (see *Finnell* v. *Goodman & Co. Bank,* 156 Cal. 18, 26, [103 Pac. 483]), but we see no reason, in the present appeal, for departing from the ordinary course.

The judgment is reversed.

Rehearing denied.